UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALTON PIERCE,<br>    Plaintiff, | : <br> : <br> : | CIVIL CASE NO.<br>3:23-CV-00998 (JCH) |
| v. | : <br> : | |
| INTER-CON SECURITY SYSTEMS, INC.<br>and NEIL SILVESTRO,<br>    Defendants. | : <br> : <br> : <br> : | MAY 21, 2024 |

**RULING ON MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE PROCEEDINGS AND FOR COSTS (DOC. NO. 23)**

**I.      INTRODUCTION**

Plaintiff Alton Pierce ("Pierce") filed suit against defendants Inter-Con Security Systems, Inc. ("Inter-Con") and Neil Silvestro ("Silvestro"), alleging race discrimination and retaliation in violation of federal and Connecticut law, as well as intentional infliction of emotional distress.  See Complaint ("Compl.") (Doc. No. 1).

Before the court is the defendant's Motion to Compel Arbitration and Dismiss or Stay the Proceedings and for Costs.  See Motion to Compel Arbitration and Dismiss or Stay the Proceedings and for Costs ("Mot.") (Doc. No. 23); Memorandum in Support ("Mem.") (Doc. No. 23-1); see also Reply in Further Support of Motion to Compel Arbitration ("Reply") (Doc. No. 28).  The plaintiff opposes the Motion.  See Memorandum of Law to Show Cause Why Lawsuit Should Not Be Stayed and Arbitration Should Not Be Compelled ("Mem. in Opp'n") (Doc. No. 25).

For the reasons set forth below, the court grants in part and denies in part the Motion to Compel Arbitration and Dismiss or Stay the Proceedings and for Costs.  The case is stayed pending arbitration.

1

## II.     BACKGROUND

The facts set forth below do not appear subject to any dispute and are limited to those necessary to rule on the pending Motion.

From January 6, 2020 to May 10, 2022, Piece was employed by Inter-Con as an Armed Security Officer (Uniformed Protection Officer) at the Department of State's Passport Center in Stamford, Connecticut.  See Affidavit of Caitlin R. Johnson ("Johnson Aff.") (Doc. No. 23-2) ¶ 6.  On December 30, 2019, Pierce received an email from Paycom, the service used by Inter-Con to send documents electronically, containing 22 documents for him to sign, including an agreement titled, "MUTUAL AGREEMENT TO ARBITRATE CLAIMS" ("Arbitration Agreement").  See Declaration of Alton Pierce ("Pierce Decl.") (Doc. No. 25-1) ¶ 3.  On December 31, 2019, Pierce electronically signed the Arbitration Agreement.  See id.; Johnson Aff. ¶ 7; Defs.' Ex. 1, Arbitration Agreement (Doc. No. 23-2).  On January 6, 2020, Inter-Con's authorized agent, Natasha Ziegler, electronically signed the agreement.  See Pierce Decl. ¶ 4; Pl.'s Ex. A, Paycom Screenshot (Doc. No. 25-1); Johnson Aff. ¶ 11.

The defendants note three sections of the Arbitration Agreement that they suggest are relevant to the instant ruling.  The first paragraph of the Arbitration Agreement reads as follows:

> I agree and acknowledge that Inter-Con Security Systems, Inc. ("Company"), including its brands, concepts, affiliates, subsidiaries, and related entities, past, present, or which may be formed in the future, and I will utilize binding arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related to my employment, including but not limited to the termination of my employment and my compensation. The Company and I each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law, and this waiver will be equally binding on any person who represents or seeks to represent me or the Company in a lawsuit against the other in a court of law. Both I and the Company agree that any claim, dispute, and/or

> controversy I may have against Company (or its owners, directors, officers, managers, employees, or agents), or the Company may have against me, will be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"). Additionally, the binding arbitration will be determined in conformity with the procedures of the California Arbitration Act ("CAA"), Code of Civil Procedure §§ 1280 et seq., including Code of Civil Procedure § 1283.05 and the CAA's other mandatory and permissive rights to discovery; however, the court may not refuse to enforce this Agreement or stay the arbitration proceeding under Code of Civil Procedure § 1281.2(c).

<u>See</u> Def.'s Ex. 1, Arbitration Agreement ¶ 1.  The second paragraph reads:

> The Parties agree the FAA and/or the CAA apply to this Agreement. Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise. The only exception to the requirement of binding arbitration will be for claims arising under the National Labor Relations Act brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, or as may otherwise be required by state or federal law. However, nothing herein will prevent me from filing and pursuing proceedings before the California Department of Fair Employment and Housing, or the United States Equal Employment Opportunity Commission (although if I pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to this Agreement). Both the Company (or its owners, directors, officers, managers, employees, or agents) and I give up our respective rights to trial by jury of any claim I or the Company (or its owners, directors, officers, managers, employees, or agents) may have against the other that may arise out of or be related to my employment.

<u>See id.</u> ¶ 2.  Lastly, above the signature section of the agreement, the Arbitration Agreement provides:

> MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT.
>
> DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGMENT AND AGREEMENT.

See id. at 2.

On July 26, 2023, Pierce filed his Complaint against Inter-Con and Silvestro. See Compl. On November 17, 2023, the defendants filed their Motion to Compel Arbitration and Dismiss or Stay the Proceedings and for Costs. See Mot. On November 20, 2023, the court ordered the plaintiff to show cause why the court should not compel arbitration and administratively close the case pending the conclusion of arbitration. See Order to Show Cause (Doc. No. 24). On December 11, 2023, Pierce filed his Memorandum pursuant to the court's Order. See Mem. in Opp'n. On January 16, 2024, the defendants filed their Reply Memorandum. See Reply.

### III.  LEGAL STANDARD

The Federal Arbitration Act provides a mechanism by which a signatory to an arbitration agreement can be compelled to pursue his claims in arbitration, rather than in a court of law. See 9 U.S.C. § 4. "The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).

"[T]he primary substantive provision of the Act," id. (citation and quotation marks omitted), Section 2, provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As a general matter, the question of whether a dispute is arbitrable depends on "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011)

(citing, inter alia, Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002)); see also Doctor's Assocs., Inc. v. Repins, No. 3:17–cv–323 (JCH), 2017 WL 1745024, at *4 (D. Conn. May 4, 2017).

Although "[t]he FAA creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,'" In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 127 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), courts look to state law in determining "whether the parties have entered into a valid arbitration agreement," Cap Gemini Ernst & Young, U.S., LLC v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (citing, inter alia, Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

**IV.   DISCUSSION**

    A.   Arbitration

The defendants argue that the Arbitration Agreement is valid because it was reduced to writing and signed by Pierce. See Mem. at 7. The defendants further contend that the plaintiff's claims are within the scope of the Arbitration Agreement. See Mem. at 6-9. In his Memorandum in Opposition, the plaintiff only counters the first argument, claiming the Arbitration Agreement is procedurally and substantively unconscionable. See Mem. in Opp'n at 4-8.

Because it is uncontroverted that the plaintiff's claims fall within the scope of the Arbitration Agreement, the only dispute before the court is whether the contract is unconscionable.

    1.   Unconscionability

As a preliminary matter, the court must decide what law governs the issue of unconscionability. "A federal court sitting in diversity . . . must apply the choice of law

rules of the forum state." Cosmetic Laser, Inc. v. Twin City Fire Ins. Co., 554 F. Supp. 3d 389, 397 (D. Conn. 2021) (quoting Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989)). However, the court need not conduct a choice-of-law analysis when there is no actual conflict between the state laws. See Cosmetic Laser, Inc., 554 F. Supp. 3d at 398.

> In Connecticut:
>
> The classic definition of an unconscionable contract is one 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.
>
> The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . .

Bender v. Bender, 292 Conn. 696, 731–32 (2009) (internal quotation marks and citations omitted). Similarly, under California law:

> [U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. [ ] Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element. The procedural element requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form. The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner. Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable.

Lhotka v. Geographic Expeditions, Inc., 181 Cal. App. 4th 816, 821, 104 Cal. Rptr. 3d 844, 848–49 (2010) (internal quotation marks and citations omitted). Because the application of either forum's laws would produce the same outcome, the court may

6

decide the case under the law that is common to both California and Connecticut. See Cosmetic Laser, Inc., 554 F. Supp. 3d at 398.

          a.        Procedural Unconscionability

As noted above, procedural unconscionability occurs when there is an absence of negotiation or meaningful choice.

In his Opposition, Pierce argues that the defendants manipulated him into signing the agreement just two days before California Labor Code section 432.6 went into effect. See Mem. in Opp'n at 5-6. He contends that the Arbitration Agreement was nonetheless void ab initio because the defendants signed the contract after the law went into effect. See id.

Section 432.6 provides:

> A person shall not, as a condition of employment, continued employment, or the receipt of any employment-related benefit, require any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act . . . or this code . . . .

See Cal. Lab. Code § 432.6(a). On February 7, 2020, Assembly Bill 51 ("AB 51"), which includes section 432.6 and section 12593 of the California Government Code, was preliminarily enjoined. See Chamber of Com. v. Becerra, 438 F. Supp. 3d 1078 (2020). In relevant part, the district court held that AB 51 is preempted by the FAA. See id. at 1099. In Chamber of Commerce v. Bonta, the Ninth Circuit affirmed the district court's entry of a preliminary injunction against AB 51 on preemption grounds. See 62 F.4th 473, 490 (9th Cir. 2023). See id. at 479-80, 490.

Pierce argues Bonta is inapposite because unconscionability is evaluated at the time of formation and section 432.6 was in effect on the day Inter-Con signed the agreement. See Mem. in Opp'n at 6 n.3. The defendants counter that section 432.6 is

7

itself inapposite because even assuming, arguendo, it were still in effect, it would not apply to voluntary arbitration agreements.  See Reply at 4.  They further contend that, even if the Arbitration Agreement were a condition of Pierce's employment, section 432.6 would not apply because the contract was entered into on December 31, 2019, the date of Pierce's signature.  See id. at 4 n. 3.

Both sides, however, miss a crucial point.  Section 432.6 provides:

> Nothing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act.

See Cal. Lab. Code § 432.6(f); see also Bonta, 62 F.4th at 479.  In other words, even if an employer were to condition employment on an agreement to arbitrate, the agreement would still be enforceable.  See Bonta, 62 F.4th at 480.  As enforcement mechanisms, section 432.6 relied on the newly enacted California Government Code section 12593 and the already-existing California Labor Code section 433, which made violating section 432.6 an unlawful employment practice and a misdemeanor, respectively.  See id.  AB 51 was essentially designed to maintain the enforceability of the arbitration agreements, but deter their formation through the enforcement provisions, section 433 of the California Labor Code and section 12953 of the California Government Code.  See id. ("But to avoid preemption by the FAA, the California legislature included a provision ensuring that if the parties did enter into an arbitration agreement, it would be enforceable.  This resulted in the oddity that an employer subject to criminal prosecution for requiring an employee to enter into an arbitration agreement could nevertheless enforce that agreement once it was executed." (internal citation omitted)).  Thus, even assuming the law was in effect at the time the contract formed, it would not have rendered it void ab initio or otherwise affected its enforceability.

Apart from his statutory argument, Pierce avers he did not have a meaningful choice when it came to signing the Arbitration Agreement because it was presented on a "take it or leave it" basis. See Mem in Opp'n at 5. He notes that the agreement was presented with twenty-one other pre-employment documents he was required to sign before his training and that he had no opportunity to negotiate the terms or opt out. See id. The defendants assert that Inter-Con presented Pierce with a voluntary Arbitration Agreement. See Reply at 3 (citing Johnson Aff. ¶ 4).[1] In other words, Pierce was not required to sign the contract as a condition of employment. See id.

Contracts that are prepared by one party and given to another on a "take it or leave it" basis are known as adhesion contracts. Brown v. Soh, 280 Conn. 494, 504 (2006); see also Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113, 6 P.3d 669, 689 (2000) ("The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.") (citation omitted)). Their "most salient feature is that they are not subject to the normal bargaining process of ordinary contracts." Empire Fire & Marine Ins. v. Lang, 655 F. Supp. 2d 150, 160 (D. Conn. 2009) (quoting Aetna Cas. & Sur. Co. v. Murphy, 206 Conn. 409, 416 (1988)). However, such contracts are not per se unenforceable. See id. at 160-61; Armendariz, 24 Cal. 4th at 113, 6 P.3d at 689 ("If the contract is adhesive, the court must then determine whether "other factors are present which, under established legal rules — legislative or judicial — operate to render it

---

[1] In his Affidavit, Johnson provides: "During all relevant time periods, Inter-Con has had a voluntary Arbitration Policy (the 'Arbitration Agreement'), pursuant to which Inter-Con and its employees agree that disputes between Inter-Con and an employee must be resolved through binding arbitration, should the employees agree to the Arbitration Agreement." See Johnson Aff. ¶ 4.

[unenforceable]." (citation omitted)); see also Larobina v. Altice Media Sols., LLC, No. FSTCV216054451S, 2022 WL 17959251, at *4 (Conn. Super. Ct. Dec. 22, 2022) ("It might be a factor in that type of analysis, but there does not appear to be a basis for treating it as determinative as a matter of law."). "Rather, the court must ask whether the disproportionate bargaining power of the parties necessarily results in contractual terms that contravene public policy or are otherwise unconscionable or void."[2] See Lang, 655 F. Supp. 2d at 161; see also Armendariz, 24 Cal. 4th at 113, 6 P.3d at 689.

Here, there is no evidence that Pierce did not have the opportunity to opt out. Certainly, the fact that the Arbitration Agreement was presented among other onboarding documents may have signaled to him that it was a mandatory form and needed to be completed prior to Pierce's start date.[3] However, nowhere does the Arbitration Agreement state nor does any other evidence currently before the court indicate that Pierce's employment was conditioned on his agreement to arbitrate. Additionally, nothing appears to have prevented Pierce from reaching out to Inter-Con to confirm whether he could opt out. If Pierce's employment was not premised on him signing the Arbitration Agreement, then it can hardly be said to be a true adhesion

---

[2] Notably, "[t]he only contracts of adhesion the Connecticut Supreme Court has invalidated are contracts that seek 'release of liability for future negligence' by a service provider, i.e., exculpatory releases required prior to participation in sporting events." See Lang, 655 F. Supp. 2d at 161 (collecting cases).

[3] As the California Supreme Court notes:

[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement. While arbitration may have its advantages in terms of greater expedition, informality, and lower cost, it also has, from the employee's point of view, potential disadvantages: waiver of a right to a jury trial, limited discovery, and limited judicial review . . . .

Armendariz, 24 Cal. 4th at 115, 6 P.3d at 690.

contract as it did not present a "take it or leave it" situation. Even assuming, arguendo, the Arbitration Agreement were adhesive,[4] this would be but one factor to consider. See, supra, at 10.

To the extent Pierce argues that the volume of documents prevented him from fully comprehending the contents of the agreement or made him feel rushed given that he was set to start training soon, this would not rise to the level of unconscionability. Caron v. Waterford Sports Ctr., Inc., No. X07CV010077059S, 2002 WL 31898081, at *4 (Conn. Super. Ct. Dec. 13, 2002) (holding that a party's own failure to read a contract does not diminish its binding force even if he felt—although not at the behest of the defendant—rushed).

Therefore, the court concludes that the plaintiff has not established procedural unconscionability. As such, the court need not reach the parties' arguments concerning substantive unconscionability. Bender, 292 Conn. at 731–32 (requiring a showing of both procedural and substantive unconscionability); Lhotka, 181 Cal. App. 4th at 821, 104 Cal. Rptr. 3d at 848-49 (same).

### 2. Dismissal

The defendants argue that the court should dismiss the action because the plaintiff's claims are arbitrable. See Mem. at 9. In the alternative, the defendants argue that the court should dismiss pending completion of arbitration. See id. at 9-10.

As the Supreme Court unanimously recently held, "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court

---

[4] Most employment agreements are adhesion contracts. Lange v. Monster Energy Co., 46 Cal. App. 5th 436, 446, 260 Cal. Rptr. 3d 35, 43 (Cal. Ct. App. 2020). "[F]ew employees are in a position to refuse a job because of an arbitration requirement." See id. (quoting Armendariz, 24 Cal. 4th at 115, 6 P.3d at 690).

proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." Smith v. Spizzirri, — S. Ct. —, No. 22-1218, 2024 WL 2193872, at *3 (U.S. May 16, 2024).  As such, the court denies the defendants' Motion insofars as it seeks dismissal.  The case is stayed pending arbitration.

      B.     Attorney Fees

The defendants also move for attorney fees and costs in connection with the Motion to Compel Arbitration.  See Mem. at 10.  They contend that plaintiff's "complete failure to withdrawal [sic] the instant action and seek arbitration" left them "with no other option but to file" their Motion.  See id.

Courts have inherent equitable powers to award reasonable attorneys' fees "when the opposing counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons." Odeon Cap. Grp. LLC v. Ackerman, 864 F.3d 191, 198 (2d Cir. 2017) (quoting Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985)).  The mere fact that defendants had to file their Motion is insufficient.  The defendants failed to show plaintiff's challenge to the Arbitration Agreement was brought for improper reasons or without any basis.  Accordingly, the court denies the defendants' Motion to the extent it seeks attorneys' fees and costs.

**V.**    **Conclusion**

For the reasons articulated herein, the court grants in part and denies in part the defendants' Motion to Compel Arbitration and Dismiss or Stay the Proceedings and for Costs (Doc. No. 23).  The Motion is granted insofar as it seeks to compel arbitration and a corresponding stay.  The Motion is otherwise denied.

     The court will therefore stay this action and administratively close the case with the unlimited right to reopen the case at any time.  No judgment will enter until arbitration has concluded.  The parties are to report to the court every six months as to the status of the arbitration.

     SO ORDERED.

     Dated at New Haven, Connecticut this 21st day of May 2024.

                                         /s/ Janet C. Hall
                                         Janet C. Hall
                                         United States District Judge